Whitney v. Kirtland.

WHITNEY vs. KIRTLAND and others.

1. An attorney in fact, who, under agreement with A's creditors to undertake at his own expense the collection of their respective claims against A for a contingent compensation, obtained judgments upon the claims, and purchased the real estate of A at sheriff's sale under executions on the judgments, occupies, in a suit to compel the delivery of the deed for the property under his agreement of purchase signed by him at the sale, the same position that any purchaser who was an entire stranger to the proceedings and claims would occupy, and has the right to maintain such suit accordingly.

2. Such party not asking the advantage of his bargain with the creditors, but merely acting upon his rights as a purchaser at the sheriff's sale, is not liable to the defence that he is guilty of champerty and maintenance.

3. Where a sheriff has executed a deed to the purchaser at a sale under execution, and has received from the attorney of the plaintiffs in the judgment under which the land was sold, a receipt for the full amount bid, and delivered the deed to such attorney, he is not a necessary party to a suit by the purchaser against such attorney to compel the delivery of the deed.

4. A party who, though not a principal, but an agent merely, holds a deed to a purchaser at sheriff's sale, and also money equitably belonging to the purchaser, under agreement made at the time of the sale, and applicable under that agreement to the payment of the purchase money, is a proper, if not a necessary party to a suit by the purchaser to compel the delivery of the deed.

Bill for relief.   On final hearing on pleadings and proofs.

*Mr. E. A. S. Man,* for complainant.

*Mr. C. Borcherling* and *Mr. C. Parker,* for defendants.

THE CHANCELLOR.

This litigation arises out of a sheriff's sale of land belonging to John Kirtland, in Orange, in the county of Essex, made July 22d, 1873, under an execution at law, issued on a judgment recovered in the Supreme Court of this state, on the 13th of February, 1865, against him and George Kirtland, in favor of George W. Kirtland.   The complainant was the purchaser at that sale.   The officer by whom it was made, and in whose hands the writ was, was Frederick W. Ricord, then late sheriff of that county.   The execution was for the sum of $16,714.15, and was levied on the land on the day on which the judgment was recovered.   There were prior encumbrances on the property, consisting of a mortgage given by John Kirtland and his wife to George W. Kirtland, on the 23d of November, 1864, for $4000 and interest, and a trust mortgage for $7500, executed by John Kirtland to George W. Kirtland, on the day last mentioned, to secure the payment to Catherine Kirtland, the wife of John Kirtland, of the sum of $6000, and to Jared T. Kirtland, his son, of $1500.   By the decree of the Court of Errors and Appeals, made on the 14th of July, 1873, (*Wheeler* v. *Kirtland,* and *Kirtland, Adm'x,* v. *Kirtland,* 9 *C. E. Green* 552, 555, 556,) a reduction of $5000 and interest from the date of the entry of the judgment, had been made in the judgment above mentioned ; the trust mortgage, as to the amount intended to be thereby secured to Catherine Kirtland, had been set aside, and as to the other amount, it stood and was reformed, (it being without words of inheritance,) so as to convey an estate in 'fee, except as against Wheeler and Green, subsequent judgment creditors.   Their judgment was for $68,246.09, and was recovered against John Kirtland and George Kirtland in the Supreme Court of this

state, on the 16th of December, 1869. Under an execution upon this latter judgment, the property had also been levied upon by Andrew Teed, who, at the time of the levying of the last-mentioned execution, was sheriff of Essex county ; and the sale under that execution was advertised to take place on the same day as the sale under the first-mentioned execution. At the sale under the execution in favor of George W. Kirtland, the property was struck off and sold to the complainant on a bid of $26,690, the amount then due on that execution, without the reduction decreed by the Court of Errors and Appeals ; one of the defendants in this suit, an attorney-at-law, who, at the sale, represented Lucy Kirtland, administratrix of George W. Kirtland, as her attorney, bidding $26,688.60. At the conclusion of the sale, the complainant signed an acknowledgment of his purchase, and gave to the sheriff, with the consent of the attorney, a memorandum check for the part of the purchase money which, by the terms of sale, was to be paid at that time. Inasmuch as a re-argument of so much of the appeal above referred to as related to the reduction of the judgment in favor of George W. Kirtland, had been ordered, and it would depend on the result thereof whether the reduction would become necessary, it was agreed between the complainant and the attorney, that for the amount of the $5000, and interest thereon to the time of the sale, (amounting together, at that date, to $8850.27,) the complainant should give a mortgage on the property, which was, as the complainant alleges, to go to Lucy Kirtland, as administratrix of George W. Kirtland, in case the re-argument should result in her favor, and to Wheeler and Green, on account of their judgment, if the result should be adverse to her. According to the allegation of Miss Lucy Kirtland and her attorney, the mortgage was to be payable to the former, as administratrix, and if the re-argument should eventuate favorably for her, it was to be hers ; and if otherwise, it was to be canceled. No mortgage was, in fact, given. Part of the premises had, while subject to the mortgages to George W. Kirtland and the judgment in

his favor, been taken, by condemnation, by the Essex Public
Road Board, for a public street or highway, called Park ave-
nue. It was understood between Miss Kirtland's attorney and
the complainant, at the sale, that the money due for the dam-
ages which had been awarded upon that condemnation, would
be the property of the purchaser at the sheriff's sale ; that Miss
Kirtland would look to the property for payment of the mort-
gage for $4000, and as to the trust mortgage, George W. Kirt-
land being then dead, it seems to have been regarded by both
of them as having no validity. These mortgages were the only
prior encumbrances on the premises. After the sale, Miss Kirt-
land's attorney proceeded to obtain the road board money, and
subsequently, on the 15th of September, 1870, before the re-ar-
gument in the appeal took place, received from the road board
$17,015.50, the amount of the award, with interest, out of which
he allowed an assessment for benefits of the improvement on
the property. The assessment, which was not yet due, and was
payable in installments, was, in amount, $1500, but a rebate
allowed in consideration of payment before it was due, reduced
it to $1320. This sum the attorney allowed in settling with
the road board. Since November 5th, 1874, the claim of
Catherine Kirtland, wife of John Kirtland, for inchoate dower
in the road board money, has been established and paid.
There are other details in the matter which I do not consider
it necessary to re-produce here. The result of the re-argu-
ment in the Court of Errors and Appeals was adverse to the
administratrix of George W. Kirtland. The decision was ren-
dered on the 1st of December, 1873. On the 23d of January,
1874, the complainant tendered to Miss Kirtland's attorney, in
cash, the balance due on the George W. Kirtland judgment,
as reduced by the decree of the Court of Errors and Appeals,
after application of the money awarded for damages on the
condemnation by the road board, and interest, and at the
same time tendered to him a receipt from B. Williamson and
Son, the attorneys of record for Wheeler and Green, in their
judgment, for the amount of the $5000 and interest, the
reduction decreed by the Court of Errors and Appeals, which,

as the complainant insists, was to be credited on that judgment if the decision of that court, on the re-argument, should be adverse to the administratrix of George W. Kirtland. On the tender, he demanded an order on the sheriff for the deed. This was refused, and subsequently, on the 28th of February following, the like tender was made by the complainant to Mr. Ricord, who declined to deliver the deed until the amount realized by the sale should have been receipted for in his execution book, by the attorneys of the administratrix of George W. Kirtland. On the 5th of November following, Mr. Ricord delivered the deed to Miss Kirtland's attorney, on the application of the latter, and on his giving him a receipt, in the name of his firm, as attorneys for the plaintiff in the Kirtland judgment, for $26,690, as received from Mr. Ricord, in full of the judgment, and the attorney still holds the deed.

The complainant's bill is filed against the attorney, the administratrix of George W. Kirtland, and John Kirtland and his wife. It prays that the agreement made between the complainant and Lucy Kirtland may be specifically performed, and that the defendants may be decreed to deliver to the complainant the sheriff's deed, on his performing his agreement in connection therewith, and that the trust mortgage may be paid off out of that part of the money realized by the sale which is applicable to the payment of the Kirtland execution, and may then be canceled of record, in order that the complainant's title under the sheriff's deed may be cleared therefrom. All of the defendants have answered.

The complainant was, and is, the attorney in fact of Wheeler and Green, and of the survivors of the firm of Hunt, Morton and Quigley, who are also judgment creditors of John Kirtland and George Kirtland. Their judgment was recovered in the Supreme Court of this state on the 8th of February, 1873, for $110,149.79. He is not an attorney-at-law. It appears that before suit was begun on these claims, he entered into an agreement with these firms respectively, to undertake, at his own expense, the collection of their respective debts, for a contingent compensation of half the amount collected on the

claim of Wheeler and Green, and the like proportion of the debt of Hunt, Morton and Quigley, after deducting a sum not exceeding $1200, also for his compensation for his time to be spent in the collection. His purchase at the sheriff's sale was, and was understood to be, as agent for Hunt, Morton and Quigley. He testifies that after the decision of the Court of Errors and Appeals on the re-argument, he paid to Wheeler and Green the surplus of the money at which the property was struck off to him, remaining after deducting the amount due on the execution on which the property was sold.

The defendants insist that the complainant is guilty of champerty and maintenance, and that his bill, for that reason, should be dismissed. He is not before this court asking the advantage of his bargain with Wheeler and Green, or of that made with Hunt, Morton and Quigley. His claim in this action is based on his purchase at the sheriff's sale under the execution in favor of George W. Kirtland, and he occupies precisely the same position in this suit, that any purchaser who was an entire stranger to the proceedings and claims would occupy. If his bid is to be regarded as $26,690, there was a surplus, after payment of the amount due on the Kirtland judgment, to be applied, on application to the court, to the Wheeler and Green judgment. If Wheeler and Green had made an improper bargain with the complainant, as their agent, in respect to his remuneration for the collection of their claim, that fact would not have deprived them of the aid of the court of law to obtain the surplus. Nor would the fact that Hunt, Morton and Quigley had made such a bargain with the complainant have deprived them of the benefit of his purchase, in their behalf, at the sheriff's sale. *Hilton* v. *Woods, L. R.,* 4 *Eq.* 432; *Elborough* v. *Ayers, L. R.,* 10 *Eq.* 367. He fairly bought the property at the sheriff's sale, and did all that was required of him upon the sale. That he did not pay the deposit, was due to the fact that there was an agreement between him and the attorney of Lucy Kirtland, which rendered it unnecessary. By direction of the latter, and in pursuance of that agreement, the sheriff accepted the memorandum

check of the complainant for the amount of the deposit. The complainant duly signed the acknowledgment of his purchase, and it does not appear that he failed, in any respect, to comply with his agreement made on the purchase. He was dissatisfied with the settlement made by Miss Kirtland's attorney with the road board, but that matter was adjusted to their mutual satisfaction. He was unwilling to allow the dower of Catherine Kirtland out of the road board money, but that, too, was satisfactorily arranged. Indeed, it is clear from the evidence, that the deed would have been delivered to him but for his refusal to yield to the requirement of the attorney on the 5th of November, 1874, that the amount of the purchase money should be changed in the sheriff's deed from the amount at which the property was struck off to him to the amount which was due on the Kirtland judgment, after the reduction. Ever since that time he has been endeavoring to obtain the deed, and has tendered himself ready to comply, in all things, with the agreement made at the sheriff's sale. In pursuance of that agreement the deed from the sheriff to the complainant was obtained by Lucy Kirtland's attorney from the sheriff, on his receipting for the purchase money. If the complainant is in no default he is entitled to the benefit of his purchase. The answer states the agreement as follows : " A verbal agreement was thereupon made between the parties litigant, the one represented by said Larned, (Mr. William Z. Larned, the New York counsel and general adviser of Miss Kirtland,) the others by said Whitney, (the complainant,) to the effect following : The sale under the Kirtland judgment was to go on ; said complainant was to bid the amount of said judgment and costs, for which both parties thought the property good security, although subject to the prior lien of the $4000 mortgage ; the amount of the road board money subject to the claim of Mrs. Catherine Kirtland for dower therein, which was then estimated at about $1200, to be applied as part of the purchase money." The answer also states that it was thought that the execution on the Kirtland judgment, having been levied prior to the taking of part of the premises by the road board, and describing

the whole property as it was before such taking, the purchaser under the levy would acquire at least an equitable right to the road board money, a right which a court of equity would enforce, subject, of course, to the prior liens of the two mortgages; and it was stated by Mr. Larned, Miss Kirtland's representative and counsel, that she was willing to look to the remainder of the property for the amount of the $4000 mortgage. It further states that no consideration was given to the trust mortgage, because the court had declared that but a life estate, for the life of George W. Kirtland, passed by it, so far as regarded Wheeler and Green; and George W. Kirtland was dead. It appears to have been subsequently agreed between Lucy Kirtland's attorney and the complainant, that for a sum equal to the amount to be reserved out of the road board money to answer the claim of dower, and the amount allowed in the settlement with the road board by the attorney for the assessment for benefits, Miss Kirtland should take a mortgage upon the property.

The agreement made at the sale is binding on Miss Kirtland. She does not allege that she was not aware that it was made in her behalf, nor that it was made without her authority; but she insists that it is not binding on her, because it was not in writing and signed by her, or by her agent thereunto lawfully authorized. There is abundant evidence that she was consulted in respect to it, and that it was made with her sanction by those who were duly authorized by her to make it. Her attorney has in his hands the money received, under and in pursuance of that agreement, from the road board, and that money is applicable to the payment of the purchase money. Nor can the right so to apply it be questioned. John Kirtland is before this court in this cause, and does not call it in question. It is true he says in the answer, that he is the legal owner of the money, but he does not question the complainant's equitable right to it as purchaser under the sheriff's deed, if he is entitled to that deed. That title is beyond dispute. Nor will the lien of the $4000 mortgage prevent its application. Though, in the answer, that lien is set up, yet the answer shows by express statement, that Miss Kirtland agreed

with the complainant at the sale, that if he should buy the property she would look to the rest of it, not taken by the road board, for payment of that mortgage.

There appears to be no good reason why the agreement should not be executed. The reason why it was not carried out appears to have been that Mr. Larned and the attorney of Lucy Kirtland insisted that the consideration money in the sheriff's deed should be, instead of the sum bid by the complainant, the amount of the Kirtland judgment as reduced, and the sheriff's fees on the execution. Up to the 5th of November, 1874, the controversies which had arisen between the parties were in reference to the settlement made by the attorney with the road board. These matters had, at that date, been satisfactorily adjusted, and the complainant attended, by appointment, at the attorney's office, on that day, to receive his deed. He fully expected then to receive it, and the attorney as fully expected to deliver it to him at that time. It appears by the answer, that the attorney refused to deliver it unless the complainant would consent to the alteration of the statement of the consideration money as above mentioned. Though the statement of this transaction in the answer, may seem to suggest that this action was induced by the discovery by the attorney, then for the first time, from the complainant's conversation, that the latter had what the former regarded as an unfair if not a sinister object in view, it appears from the testimony of Mr. Larned, that both he and the attorney were aware of that design on the day of sale. The object referred to is stated in the answer to have been, to contend, in a suit then brought, or thereafter to be instituted, in behalf of creditors of John Kirtland and George Kirtland, that the judgment in favor of George W. Kirtland was fraudulent as against those creditors, and that Lucy Kirtland must answer as having made disposition of the property of John Kirtland to the amount of the bid of $26,690 ; and also to insist that the purchase money must be appropriated to the payment of the claims of Catherine Kirtland and Jared T. Kirtland, or one of

them, under the trust mortgage. Mr. Larned testifies that on the day of the sale, the attorney of Lucy Kirtland asked the complainant if his principals, Hunt, Morton and Quigley, proposed, after the sale under the execution, to take any steps in an existing suit in the United States Circuit Court, to prevent the payment to Lucy Kirtland of the money raised by the sale, and that the complainant replied that he did not contemplate anything of the kind, but proposed in that suit to rely upon her responsibility, which he supposed was abundant. It also appears from the testimony of the attorney, that he knew of the design in question before the 5th of November, 1874. Although, in April of that year, a question was raised as to whether the bid should be regarded as $26,690, or as the sum due on the Kirtland execution after the reduction, it appears to have been abandoned. In the agreement of April, 1874, drawn by the attorney, but not executed, a copy of which is appended to the answer, it was provided that Wheeler and Green, "in order to the delivery of the deed," should receipt upon their execution the excess of the price bid at the sheriff's sale, over the amount due on the Kirtland judgment as reduced. The draft of agreement made by him, dated May, 1874, contains the same provision. In his letter of June, 1874, to the complainant's counsel, he suggests that certain things should be done for the complainant to facilitate the closing up of the business, and the first of them is, to " apply to the Circuit Court and get an order that the surplus in Ricord's hands be paid to the Wheeler and Green judgment." The testimony shows that at the sheriff's sale it was necessary for the complainant, in order to get the property, to bid $26,690 for it, and that, inasmuch as it was, in view of the re-argument, still undecided whether the reduction on the Kirtland judgment would be made, a mortgage for the amount of the reduction should be executed to the attorney of Miss Kirtland, to be given to her in case the decree for reduction should not stand; otherwise, according to the complainant's testimony, to go to Wheeler and Green. There is a conflict of testimony on the subject of the bid, not as to the amount, for that it,

was $26,690, is admitted.   It is also admitted that the deposit was upon that sum.   The acknowledgment of purchase and the attorney's receipt to the sheriff both show the same sum. If the property had been struck off to Miss Kirtland on her bid of $26,688.60, she would, unquestionably, have been compelled to pay the surplus to Wheeler and Green.   The conflict is as to the existence of an agreement, affirmed on the one side and denied on the other, that the bid of the complainant should be understood to be the amount of the Kirtland judgment and sheriff's execution fees, notwithstanding the fact that they might prove to be less in amount than the sum at which the property was struck off.   In deciding the question, weight must be given to the fact that the bid was the sum of $26,690; that $26,688.60 were bid in behalf of Miss Kirtland, subject to no understanding whatever as to reduction, and that in the correspondence of the parties, and in the drafts of agreements before referred to, the surplus, the amount of the reduction, is provided for as belonging to Wheeler and Green. I do not regard the question as one of importance to Miss Kirtland, however, and indeed her attorney appears to have entertained a like view of it at times; for, from April, 1874, to November in that year, it was, as before remarked, apparently abandoned, and in July, 1875, according to Mr. Man's testimony, he told the complainant that he no longer insisted upon the reduction of the consideration money in the deed.   The question, manifestly, is of no importance to Miss Kirtland, except it be in view of the complainant's design above referred to, and it has none in that aspect; for the Kirtland mortgage of $4000 and the Kirtland judgment have both been established, except as to the amount of the reduction decreed to be made in the latter.   Miss Kirtland receives out of the proceeds of sale, only the amount due on her judgment.   The complainant was at liberty to bid whatever sum he saw fit.   It is difficult to conjecture what liability was reasonably to be apprehended by Miss Kirtland from the fact that the bid, over which she had no control, exceeded the amount due on her judgment.   It is equally difficult to con-

jecture how, on the supposition that such liability would exist, she or her counsel could have avoided it if the property were sold under her execution. On the hearing, no suggestion was made that any liability is, in fact, to be apprehended in respect to the surplus.

It is insisted by the defendants' counsel, that Mr. Ricord is a necessary party to this suit. But no relief is sought against him. He has executed the deed to the complainant, and has been discharged by the attorneys of the plaintiff in the judgment from liability for the proceeds of the sale. On the 4th of November, 1874, the attorney of Lucy Kirtland, in order to obtain the deed, gave to the sheriff a receipt for the sum of $26,690, in full of the judgment under which the land was sold. Mr. Ricord is not a necessary party to this suit. He has no interest in it. The complainant does not look to him for the deed, but to the attorney who, as he insists, holds it in trust, to be delivered up to him on his complying with the agreement made at the sale. The attorney has in his hands by far the larger part of the purchase money. He received it as the property of the complainant, and on his account. To obtain it, he applied expressly on behalf of the complainant and Miss Kirtland, and he received it accordingly. In his communication to the road board, asking that the money be paid to him, he said : "Being fully acquainted with this matter, I state my opinion that the title to the land and the money is, by the sheriff's sale, in Stephen W. Whitney, subject to the lien of the two mortgages and the inchoate right of dower in Mrs. Catherine Kirtland, all of which are to be released. The title will thus be made good, beyond exception." By the sheriff's sale, the right to that money was vested, in equity, in the complainant, subject, of course, to prior liens. It is in the hands of the attorney of Miss Kirtland, and was obtained with a view to applying it to the payment of the purchase money due from the complainant. It is a payment *pro tanto.* The dower of Catherine Kirtland has been established and paid out of the money. There is, in equity, no lien of the $4000 mortgage on the money, for Miss Kirtland, as

appears by the answer, agreed with the complainant that, if he should become the purchaser of the property, she would look to the rest of the property, not taken by the road board, for the payment of that mortgage. He bought the property on that understanding, and on the faith of it he has paid over the surplus, $8850.27, to Wheeler and Green, on their judgment. There is also evidence of an agreement on the part of the counsel and attorney of Miss Kirtland, with her sanction, to accept a mortgage for an amount of the purchase money equal to the sum ($1400) ordered to be retained to answer the claim for dower, and the amount ($1370) allowed in respect to the assessment for benefits. The complainant is entitled to his deed on his complying with his part of the ·agreement. There is no allegation that he is in any laches, nor does there appear to be any ground for such allegation.

It is insisted by the defendants' counsel, that the bill should be dismissed as to the attorney of Miss Kirtland, because he appears to have been an agent or attorney merely, and in no wise a principal. It is true that in this matter he has acted as attorney and counsel merely, but he holds the deed and the money received from the.road board, applicable to the payment of the purchase money. He is a proper, if he be not a necessary party to the suit.

The agreement between Miss Kirtland and the complainant, made at the sheriff's sale, is not only established, but it has, to a very great extent, been executed. The road board money collected under it, and applicable to the payment of the purchase money, might, at all times, have been, as it now may be, applied according to the agreement. ' In obtaining that money, the attorney of Miss Kirtland acted as attorney for the complainant, and his action in allowing the assessment for benefits was binding on the latter, who has no claim upon Miss Kirtland in respect to it. The dower was to be paid out of the road board money. That claim was, neither at law nor in equity, subject to or affected by the judgment against John Kirtland and George Kirtland, or the sale under it. The agreement made by Miss Kirtland to accept a mortgage

on account of the purchase money, for an amount equal to the sum retained to answer the claim of dower and the amount allowed for the assessment for benefits, was a merely voluntary agreement. It will not be enforced.

The prayer for a decree that the trust mortgage be paid out of the proceeds of the sale under the Kirtland judgment, in order that the complainant's title may be cleared of the cloud which it casts upon it, will not be granted. That mortgage, indeed, was not reformed as against the Wheeler and Green judgment, but it stands reformed as against the Kirtland judgment. The complainant, as purchaser under the latter judgment, has no equity to have it discharged out of the proceeds of the sale. None is set up in the bill, except that which is claimed to arise from the fact that that mortgage was not reformed as against the Wheeler and Green judgment, and that is, indeed, no equity.

The conclusion is, that the attorney of Miss Kirtland will be decreed to deliver the deed to the complainant on receiving the balance, without interest thereon, remaining due on the Kirtland execution, as reduced, with interest up to November 5th, 1874, but not after that date, after applying the road board money, (deducting, of course, the amount paid for dower,) with the interest which he has received thereon, and the delivery to him of a receipt of Wheeler and Green's attorneys for surplus on the execution. The complainant is entitled to costs as against Miss Kirtland and her attorney.